UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

FRANK SIMMONS, Individually and on
Behalf of all Others Similarly
Situated,

                    Plaintiffs,

                                              13 Civ. 8216 (RWS)

     - against -

                                                   OPINION

CHRISTOPHER J. SPENCER, JOHN BUSSHAUS,
and FAB UNIVERSAL CORP.,

                    Defendants.

------------------------------------X

JOE STUBBLEFIELD, Individually and on
Behalf of all Others Similarly
Situated,

                    Plaintiffs,

                                              13 Civ. 8499 (RWS)

     - against -

                                                   OPINION

FAB UNIVERSAL CORP., CHRISTOPHER J.
SPENCER, and JOHN L. BUSSHAUS,

                    Defendants.

------------------------------------X

JAMES COX, Individually and on
Behalf of all Others Similarly
Situated,

                    Plaintiffs,

                                          13 Civ. 8716 (RWS)


     - against -

                                               <u>OPINION</u>

FAB UNIVERSAL CORP., CHRISTOPHER J.
SPENCER, and JOHN L. BUSSHAUS,

                    Defendants.

----------------------------------X



A P P E A R A N C E S:


          <u>Attorneys for Qingping Deng and Proposed</u>
          <u>Lead Counsel for Class</u>

          FARUQI & GARUQI, LLPu
          369 Lexington Avenue, 10th Floor
          New York, NY  10017
          By:  Richard W. Gonnello, Esq.
               Francis P. McConville, Esq.
               Megan M. Sullivan, Esq.


          <u>Attorneys for the FAB Group and Proposed</u>
          <u>Lead Counsel for Class</u>

          THE ROSEN LAW FIRM P.A.
          275 Madison Avenue, 34th Floor
          New York, NY  10016
          By:  Phillip Kim, Esq.
               Laurence M. Rosen, Esq.

1

**Sweet, D.J.**

The instant litigation arises from three securities class actions (the "actions") presently pending before the Court on behalf of purchasers of FAB Universal Corp. ("Fab" or the "Company") securities between June 15, 2012 and November 18, 2013, inclusive (the "Class Period") to pursue remedies under the Exchange Act.

Four competing motions were submitted by shareholder groups seeking appointment as lead plaintiff and seeking their respective attorneys as lead counsel for the class.  The four groups were as follows: (1) Michael Shivo, Joseph Caizzo, Frank Chung, Yang Lu and Feng Zhang (the "FAB Group"); (2) Elena Murphy and Denise J. Winner (the "Murphy-Winner Group"); (3) Qingping Deng ("Deng"); and (4) Scott Jones and Wendy Jones, and Larry Segroves and Dorothy Segroves (the "Jones-Segroves Group")[1].

---

[1] Movant Andre Blackburn and Denise Blackburn (the "Blackburn Group") withdrew their lead plaintiff motion on January 24, 2014.  (Dkt. No. 18.)  Further, only counsel for the FAB group and Deng were present at oral arguments.  As such, only the FAB group and the Deng's motions will be considered.  Even if the other two groups had been present, the FAB group and Deng have the strongest motions for lead plaintiff, and have significantly larger financial interests than the Murphy-Winner and Jones-Segroves Groups.

For the reasons set forth below, the FAB Group and Deng are appointed as co-Lead Plaintiffs, and their requested counsel are appointed as co-Lead Counsel.

## Prior Proceedings and Facts

Fab is a Colorado corporation that generally operates through its subsidiaries in the People's Republic of China ("PRC"). The Company specializes in the distribution of entertainment products and services worldwide through three segments: Wholesale, Retail and Kiosk/Licensing. Fab's main source of revenue and profit is derived from its PRC subsidiary, which operates Intelligent Media Kiosks ("Kiosks"). Fab's Kiosks allow consumers to download supposedly copyrighted movies and music to their own portable storage devices.

Throughout the Class Period, Defendants are alleged to have issued materially false and misleading statements to the investing public regarding the Company's operations, business prospects and financial condition. Specifically, the Company purportedly failed to disclose that (i) it had overstated the number of its Kiosks in the PRC; (ii) its Kiosks contained

3

pirated digital entertainment content; and (iii) its PRC

subsidiary had issued RMB 100 million ($16.4 million) in bonds

to PRC investors in April 2013.


On November 14, 2013, *AlfredLittle.com*, an analyst

firm, published a report revealing that Fab was essentially a

"fraud."  In relevant part, the report stated that:

- All four of Fab's Kiosk supplies had historically supplied 1600-1700 Kiosks to Fab in total, which represents only about 10% of the over 16,000 Kiosks the Company claimed to currently have in active service;

- Fab's Director of Franchise Sales acknowledged that only about 1,000 Kiosks had been deployed in Beijing, China, as opposed to the over 3,900 Kiosks the Company claimed it had in that particular city;

- Fab's Kiosks were filled with pirated content for download, which contradicts the Company's copyright protection claims.

(*See generally AlfredLittle.com* November 14, 2013 Article ("Nov.

14 Article").)  As a result of this report, the Company's stock

price fell $0.21 per share, to close at $5.25 per share on

November 14, 2013.


On November 18, 2013, *GeoInvesting.com* issued a report

revealing that a RMB 100 million ($16.4 million) April 2013 bond

offering was never disclosed in Fab's 2013 second and third quarter Forms 10-Q.  As a result of that disclosure, the Company's stock price decreased an additional $0.89 per share, to close at $4.40 per share on November 18, 2013, a one-day decline of nearly 17%.  On November 22, 2013, trading of Fab securities was halted entirely.

The class members seek to recover losses suffered as a result of the Company's and its officers' potential fraud.

On November 18, 2013, Frank Simmons, on behalf of himself and all others similarly situated, filed a Complaint against Christopher J. Spencer ("Spencer"), John Brusshaus ("Brusshaus"), and Fab (collectively, the "Defendants").

On November 18, 2013, pursuant to § 21D(a)(3)(A)(I) of the PSLRA, a notice of the pendency of the instant litigation was published on *GlobeNewsWire*, a widely circulated national business-oriented wire service, accounting that a securities class action had been filed against Fab and certain of its executive officers, and advising purchasers of the Company's securities that they had until January 17, 2014 to file a motion to be appointed as lead plaintiff.

On January 17, 2014, certain class members moved to be certified as lead plaintiff, and for their counsel to be lead counsel for the class. This motion was heard and marked fully submitted on March 19, 2014.

## Consolidation is Appropriate

Consolidation is not disputed in the instant action.

Consolidation is appropriate when the actions before the court involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation. *See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC),

6

2009 WL 2259502, at *2-3 (S.D.N.Y. July 29, 2009) (consolidating
actions asserting different claims against different defendants
over different class periods).

The instant action involves common questions of law
and fact.  The actions assert claims under the Exchange Act on
behalf of investors who were allegedly defrauded by Fab and
certain of the Company's officers.  The allegations are
virtually identical, involving the materially false and
misleading statements and omissions by the named Defendants that
artificially inflated Fab's stock price, which subsequently fell
when the alleged fraud was revealed, resulting in investor
losses.  While minor differences currently exist in the class
definitions, for instance the *Stubblefield* action purports to
represent a class of "all persons who purchased Fab publicly
traded securities," while the proposed *Simmons* and *Cox* classes
consist of "all persons or entities . . . who purchased the
common stock, call options or sold put options of Fab" during
the Class Period, the factual and legal allegations underlying
all class definitions sufficiently overlap.

Consolidation is thus appropriate under Fed. R. Civ.
P. 42(a).  *See, e.g., Kaplan v. Gelfond*, 240 F.R.D. 88, 91

(S.D.N.Y. 2007) ("When a court is presented with securities actions in which the complaints are based on the same public statements and reports, consolidation is appropriate if the actions present common questions of law and fact and if the parties will not be prejudiced.").

**The FAB Group and Deng are Appointed Co-Lead Plaintiffs**

A. *The Applicable Standard of Law*

The PSLRA establishes the procedure for the appointment of a lead plaintiff "in each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i). Pursuant to the PSLRA, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after the filing of the first complaint.  15 U.S.C. §78u-4(a)(3)(A)(i).

Under 15 U.S.C. §78u-4(a)(3)(B)(i), the Court is then to consider any motion made by the class members and is to appoint as lead plaintiff the movant that the Court determines

to be the "most capable of adequately representing the interests
of class members."  The PSLRA provides a "rebuttable
presumption" that the "most adequate plaintiff" is the person or
group that:

> (aa) has either filed the complaint or made a motion
> in response to a notice . . . ;
>
> (bb) in the determination of the court, has the
> largest financial interest in the relief sought by the
> class; and
>
> (cc) otherwise satisfies the requirements of Rule 23
> of the Fedearl Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I).


> B. *Because Conflict Exists as to the intra-Class
>    Period Losses, as well as who has the Largest
>    Financial Interest, Deng and the FAB Group serving
>    as Co-Lead Plaintiffs is Appropriate*

Both the FAB group and Deng satisfy the first
criteria.


On January 17, 2014, the FAB Group filed the instant
motion pursuant to the published notice, and submitted sworn
certifications attesting that they would be willing to serve as
representatives of the Class and willing to provide testimony at
deposition and trial, if necessary.  (*See* FAB Group Memorandum
in Support of Certification, "FAB Mem."; Ex. 2.)  Deng also

9

timely signed and submitted his certified motion.  (*See* Deng
Memorandum in Support of Certification, "Deng Mem."; at 7.)

The remaining two factors are less straightforward.

In terms of the second factor, greatest financial
interest, Courts vary in how to calculate this loss.  "In the
absence of explicit guidance, many courts, including courts in
this District and in the Eastern District of New York, have
adopted a four-factor test first promulgated in *Lax v. First
Merchants Acceptance Corp.,* No. 97 Civ. 2715, 1997 WL 461036
(N.D.Ill. Aug. 11, 1997), and later in *In re Olsten,* 3 F.Supp.2d
at 295 (the "Olsten-Lax Test")."  *In re Fuwei Films Sec. Litig.,*
247 F.R.D. 432, 437 (S.D.N.Y.2008)(citing *see Pirelli,* 229
F.R.D. at 404 (collecting cases)); *see also Andrada v.
Atherogenics, Inc.,* No. 05 Civ. 061(RJH), 2005 WL 912359, at *3
(S.D.N.Y. April 19, 2005); *Ferrari v. Impath, Inc.,* No. 03 Civ.
5667(DAB), 2004 WL 1637053, at *4 (S.D.N.Y. July 20, 2004); *In
re Comverse Tech., Inc. Secur. Litig.,* No. 06 Civ.
1825(NGG)(RER), 2007 WL 680779, at *3 (E.D.N.Y. May 2, 2007).
Other courts in the Southern District have expressed "a very
strong preference for the LIFO method in calculating loss."
*Richman v. Goldman Sachs Group, Inc.,* 274 F.R.D. 473, 476

10

(S.D.N.Y. 2011); *see also Bo Young Cha v. Kinross Gold Corp.*,
No. 12 Civ. 1203 (PAE), 2012 U.S. Dist. LEXIS 79288, at *9-10
(S.D.N.Y. May 31, 2012) ("[T]he overwhelming trend both in this
district and nationwide has been to use LIFO to calculate such
losses.").

If calculated using the first method, or on the
factors derived from *Lax v. First Merch. Acceptance Corp.,* Nos.
97 C 2715 et al., 1997 WL 461036, at *5 (N.D.Ill. Aug. 11,
1997), and *In re Olsten Corp. Sec. Litig.,* 3 F.Supp.2d 286, 295
(E.D.N.Y. 1998), the FAB group likely has the greatest financial
interest. *See In re Fuwei Films Sec. Litig.,* 247 F.R.D. 432, 437
(S.D.N.Y.2008).

> The *Lax/Olsten* factors include:
>
> (1) the total number of shares purchased during the
> class period; (2) the net shares purchased during the
> class period (in other words, the difference between
> the number of shares purchased and the number of
> shares sold during the class period)/ (3) the net
> funds expended during the class period (in other
> words, the difference between the amount spent to
> purchase shares and the amount received for the sale
> of shares during the class period); and (4) the
> approximate losses suffered.

*Kaplan v. Gelfond,* 240 F.R.D. 88, 93 (S.D.N.Y. 2007) (citations
omitted). Financial loss, the last factor, is the most important

element of the test. *See Reimer,* 2008 WL 2073931, at *3 ("The
fourth factor is viewed as the most important."); *In re Fuwei
Films,* 247 F.R.D. at 437 ("This Court, like many others, 'shall
place the most emphasis on the last of the four factors: the
approximate loss suffered by the movant.'" (*quoting Kaplan,* 240
F.R.D. at 93)).

The FAB Group suffered financial losses of over
$961,000.00 at the illiquid price and over $510,937 at the last
trade price.  (FAB Mem. Ex. 3.)  The FAB Group has over 146,000
net shares purchased during the class period, and 266,846 total
shares purchased.  No other movant has alleged a greater number
of net shares.

However, under the LIFO method, the FAB group's losses
total $415,925.88, whereas Deng's alleged losses total
$426,953.55, when using a last in, last out methodology or a
first in, first out methodology, in connection with his and his
wife's purchases.  (*See* Deng Mem. Ex. C. at 8.)

A table summarizing these calculations follows:

12

| Plaintiff | Total Shares Purchase | Net Shares Purchased | Net Funds Expended | LIFO Losses |
|-----------|----------------------|---------------------|-------------------|-------------|
| Qingping Deng | 192,185 | 94,752 | $775,531.46 | $426,953.55 |
| The FAB Group | 266,846 | 146,171 | $961,144.71 | $415,925.88 |

As such, who has the largest financial interest in the litigation depends on the method employed.

Looking to the third factor, Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. A *prima facie* showing that the movant has satisfied these requirements is sufficient. *Funwei Films*, 247 F.R.D. at 439 (only a *prima facie* showing is required). Further, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *Id.* at 437.

13

With respect to typicality, like all members of the Class, both the FAB Group and Deng purchased Fab stock at prices artificially inflated by Defendants' misrepresentations and omissions, and consequently allege that Defendants violated the federal securities laws by disseminating false and misleading statements concerning the business, operations and financial prospects of Fab. The two Plaintiffs' interests are thus closely and sufficiently aligned with the class.

Further, that the FAB Group consists of unrelated members of the class does not disqualify its appointment as lead plaintiff. A group consisting of persons that have no pre-litigation relationship may be acceptable as a lead plaintiff candidate so long as the group is relatively small, such as here with only five members, and therefore presumptively cohesive. *See, e.g., Weltz v. Lee,* 199 F.R.D. 129, 133 (S.D.N.Y.2001) (aggregation of seven shareholders did not present group so cumbersome as to deliver control of litigation into the hands of the lawyers); *In re Oxford Health Plans Inc., Sec. Litig.,* 182 F.R.D. 42, 46 (S.D.N.Y.1998) ("The Court is convinced that the limited size of the [plaintiff group] coupled with the scope of each individuals' loss will make the [plaintiff group], as

14

reduced by the Court, an effective monitor of its counsels'
performance, thereby fulfilling its purpose under the PSLRA.").

However, with respect to adequacy, the FAB Group and
Deng disagree as to whether the timing of certain purchases
should preclude their qualification in calculation of losses.

A plaintiff is "adequate" where a representative party
has the ability to represent the claims of the class vigorously,
has obtained adequate counsel, and there is no conflict between
a movant's claims and those asserted on behalf of the class. *In
re Cendant Corp. Litigation*, 264 F.3d 201, 265 (2d Cir. 2001).
Though both the FAB Group and Deng are able to vigorously
represent the class with competent, experienced counsel, the two
parties disagreement as to which claims qualify as losses
presents concerns as to potential conflict of interests among
members of the Class.

Specifically, the FAB Group asserts that certain of
Deng's losses should be discounted to include only those losses
relating to the purchase and sale of stock prior to November 14,
2013.   Precluding losses prior to fraudulent disclosures is
common.  "If, say, the purchaser sells the shares quickly before

15

the relevant truth begins to leak out, the misrepresentation will not have led to any loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005).

In contrast, Deng maintains that additional disclosures of the Defendants' fraud occurred on October 1, 2, and 3, 2013. According to Deng, because of these additional fraudulent misrepresentations, losses prior to November 14, 2013 can still be considered even under *Dura* if they correspond to these additional disclosures. *See Juliar v. SunOpta, Inc.*, No. 08 Civ. 933 (PAC), 2009 U.S. Dist. LEXIS 58118, at *7-9 (S.D.N.Y. Jan. 30, 2009) (refusing to exclude a movant's purported losses incurred before the first corrective disclosure alleged in the complaint when the movant presented sufficient evidence to infer that there "was substantial leakage of [] misconduct prior to" the complaint's first disclosure); *see also In re GE Secs. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *12 (S.D.N.Y. July 29, 2009) (holding that the fact that the movant sold shares during the class period did not definitively detract from the movant's stated loss due to allegations of an earlier partial disclosure).

16

In addition, with respect to the FAB Group's concern
that Deng sold shares during the class period, Deng maintains
that courts in this District have rejected arguments that such
in and out traders are "atypical," and have found instead that
"selling shares during the class period does not disqualify a
class member from being appointment lead plaintiff." (Deng Mem.
at 8 (citing *Ellenburg v. JA Solar Holdings Co.*, 262 F.R.D. 262,
268 (S.D.N.Y. 2009); *Freudenberg v. E*Trade Fin. Corp.*, No. 07
Civ. 8538, 2008 U.S. Dist. LEXIS 62767, at *20-21 (S.D.N.Y. July
16, 2008) (Sweet, J.) ("Nor does the sale by [the movant] of
their [] securities by August 20, 2007, prior to the end of the
alleged class periods in the current complaints, render them
inadequate or atypical under the PSLRA."); *In re Gentiva*, 281
F.R.D. at 116-17 ("[I]n any event, selling shares during the
class period does not disqualify a class member from being
appointed lead plaintiff.")).)

Given the closeness in losses alleged between the two
parties, as well as the potential conflict arising involving
losses in connection with intra-Class Period sales, "the
interests [of] the class [will] be [better] protected by the
appointment" of both Deng and the FAB Group as co-lead
Plaintiffs. *See Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113,

17

120-121 (S.D.N.Y. 2010) (Sweet, J.).  This will ensure that all
losses alleged by members of the class are adequately advanced,
and that potential conflicts that may arise will not prevent
consolidation.  *See Freudenberg*, 2008 U.S. Dist. LEXIS 62767, at
*21 (Sweet, J.) ("[O]n the possibility that conflicts do
ultimately arise, the interests of the class can be protected by
the appointment of a co-lead plaintiff."); *see also In re BP,
PLC Sec. Litig.*, 758 F. Supp. 2d 428, 437-38 (S.D. Tex. 2010)
(appointing co-lead plaintiffs because conflicts risked hurting
the interests of the broader class). Indeed, "[g]iven the
divergent views expressed in the movants' papers as to . . .
what types of transactions were allegedly affected by
Defendants' purported conduct" a lead-plaintiff structure will
impart a "significant advantage if not [be] outright imperative
in this consolidated action[.]" *Pirelli Armstrong Tire Corp.
Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395,
421 (S.D.N.Y. 2004) (Sweet, J.).

**Deng's Counsel and the FAB Group's Counsel are Appointed Co-Lead
Counsel**

          The PSLRA vests authority in the lead plaintiff to
select and retain counsel, subject only to approval of the
Court.  Thus, the Court should not disturb the lead plaintiff's

choice of counsel unless "necessary to protect the interest of the plaintiff class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa); *see also In re Cavanaugh*, 306 F.3d 726, 733 (9th Cir. 2002).

The FAB Group has retained the Rosen Law Firm P.A. (the "Rosen Firm") as counsel.  The Rosen Firm has extensive experience in the area of securities litigation and has successfully prosecuted securities fraud class actions on behalf of investors.  (*See* FAB Mem. Ex. 4.)  The Rosen Firm has also documented sufficient resources and expertise to litigate the action, including trained Chinese speaking counsel, experience in particular with securities class actions involving Chinese issuers, and successful litigations against PRC issuers on dismissal motions.  *See, e.g., Munox v. China Expert Technology, Inc.*, 2011 WL 5346323 (S.D.N.Y. Nov. 7, 2011) (issues concerning Chinese State Secrecy laws and discovery in China); *Rose v. Deer Consumer Products, Inc.*, 2011 WL 6951969 (C.D. Cal. Dec. 29, 2011) (service of process issues relating to PRC defendants).

Deng has retained the Faruqi Firm as counsel.  The Faruqi Firm likewise possesses extensive experience litigating complex class actions, including securities actions in which the

firm has retained significant recoveries and which involve issues relating to the PRC.  (Deng. Mem. at 11.)

Both firms are qualified to serve as counsel in this case, and are appointed as co-Lead Counsel.

**Conclusion**

For the foregoing reasons, the FAB Group and Deng are appointed co-Lead Plaintiffs, and the Rosen Firm and the Faruqi Firm are appointed co-Lead Counsel.

It is so ordered.

New York, NY
April 2 4, 2014

ROBERT W. SWEET
U.S.D.J.